```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
```

ROOSEVELT WILLIAMS,

                Plaintiff,

  v.                                                   OPINION and ORDER

KIM CARL, LUCAS WOGERNESE,                      16-cv-584-jdp
and TIM ZIEGLER,

                Defendants.

      Plaintiff Roosevelt Williams, a prisoner incarcerated at Waupun Correctional Institution, alleges that prison officials at Columbia Correctional Institution blocked him from leaving his cell to get ice to treat his gout, forced him to use a top bunk despite his medical problems, and retaliated against him for filing grievances and lawsuits. Williams bring claims under the First and Eighth Amendments to the United States Constitution and under Wisconsin law for negligence and for negligent infliction of emotional distress.

      Each side has filed a motion for summary judgment. Dkt. 45 and Dkt. 86. I will grant defendants' motion and deny Williams's motion because Williams fails to present facts showing that he was harmed by occasional denials of ice, that the unit manager who assigned him to a top bunk consciously disregarded his medical problems, or that any of the defendants intended to retaliate against him.

      The parties have filed several other motions that I will consider before addressing the summary judgment motions.

## PRELIMINARY MATTERS

I previously denied several motions filed by Williams, including motions to compel discovery, a motion for a third-party subpoena to obtain video recordings, and a motion for the court's assistance in recruiting him counsel. *See* Dkt. 79. Following that order, Williams filed another round of motions with similar problems. Williams filed two motions to compel discovery of defendants' employment-discipline records and information about grievances filed against them. Dkt. 81 and Dkt. 94. But he doesn't include any formal discovery requests that he sent to defendants before filing his motion, and it doesn't appear that there are any. Instead, from the way Williams phrases his motions, it appears that he filed motions to compel instead of requesting discovery from defendants. But from my previous order and Williams's previous cases in this court, he should be aware that he can't file a motion to compel before submitting discovery requests directly to defendants. I'll deny his motions to compel.

Williams has filed a second motion for third-party subpoena, addressed to Columbia Correctional Institution, to produce video footage of several medication-pass incidents in which Williams says that defendant Carl would not let him leave his cell to get ice to treat his gout. Dkt. 82. I denied Williams's previous motion because there wasn't any reason to think that Williams needed to subpoena a third party to obtain this footage. Dkt. 79, at 2. I directed defendants to respond to Williams prior motion as if it was a request for production of documents. But Williams filed his new motion only about a week after I denied his first motion, and he does not explain whether or how defendants responded to his first motion. So I'll deny his new motion for the same reason I denied the first one. I'll note that although Williams believes that the video recordings would show that defendants violated his rights, my summary judgment rulings in this case do not depend on disputed issues of fact about exactly what

defendants did or said in particular instances—even assuming that Williams's version of the facts are correct, defendants are entitled to summary judgment.

Williams renews his motion for the court's assistance in recruiting him counsel, Dkt. 83, that he filed only a week after I denied his previous motions for counsel. *See* Dkt. 79, at 3–4. The new motion is virtually identical to his previous two. He doesn't give me any reason to change my previous decision. He continues to assert that he has a third-grade education level, that it is difficult for him to litigate the case as an indigent prisoner without a jailhouse lawyer, and that the case involves complex medical issues. But his relative lack of education and litigation abilities are relatively common among prisoner plaintiffs in this court and are not themselves enough to distinguish Williams from dozens of other inmates seeking assistance from a limited pool of potential lawyers. And from Williams's previous cases that he has litigated through summary judgment in their court, including another one about his gout, 17-cv-304-jdp, he has shown that he is capable of presenting his case. Unlike his previous cases, he has had persistent problems with conducting discovery, but as my analysis below shows, the case doesn't boil down to issues related to the discovery he has been unable to obtain. His real problem is that he doesn't provide evidence showing how he was harmed by defendants' actions or why he believes that defendants and other prison officials conspired to harm him. So I will deny his renewed motion for the court's assistance.

Williams has filed a motion asking me to intervene in non-defendant prison officials' retaliation against him at the Waupun Correctional Institution. Dkt. 101. He says that they gave him a false conduct report in retaliation for his filing grievances and lawsuits. But this new alleged retaliation is about brand-new events that are not part of the current lawsuit. So I will deny Williams's motion.

Williams filed a motion for an extension of time to file his response to defendants' motion for summary judgment, Dkt. 95, and he quickly followed with his opposition materials. I'll grant his motion and consider his opposition materials.

Defendants have filed a motion to stay the pretrial-submission deadlines and May 11, 2020 trial date, Dkt. 104, which I will deny as moot because this order results in dismissal of the entire case.

UNDISPUTED FACTS

The following facts are undisputed unless noted otherwise.

Plaintiff Roosevelt Williams is currently a prisoner at Waupun Correctional Institution. At the time of the events of the case, Williams was at Columbia Correctional Institution (CCI). Defendants all worked at CCI: Kim Carl was a sergeant, Lucas Wogernese was a captain, and Timothy Ziegler was a unit manager.

Williams has been diagnosed with gout, a condition causing painful inflammation of his joints. He says that his symptoms "come[] and go": he has flare-ups four or five times a year, lasting two to four days a time. Dkt. 103, at 6, ¶ 11. Williams had prescriptions for allopurinol to decrease his uric acid level, medications to treat high blood pressure that often accompanies gout, and ibuprofen to treat inflammation and pain. Williams also suffers from chronic back pain. He also was provided with a back brace for his back pain.

At the time of the events in this case, Williams was prescribed "medical ice" to apply to his left foot four times a day, and he was supposed to obtain ice bags for that purpose during medication-pass time, when inmates would be allowed to leave their cells to obtain the bags. I take this to mean that there were four medication-pass times each day. The "Special Handling

Summary" document showing Williams's various restrictions or privileges did not state what purpose the ice was for. Inmates at CCI can also get ice during dayroom hours or after meals.

Williams says that on eight occasions between February and April 2016, Carl would not let him out of his cell at medication-pass time. Those dates are as follows:

- Each day from February 9 to February 13, 2016 during the morning medication pass (occurring between 7:00 and 8:00 a.m.)
- At least once on March 29 (Williams does not explain when or how many times that day)
- March 31, 2016, during the morning medication pass
- At least once on April 2, 2016 (Williams does not explain when or how many times that day)

In January 2016, Williams complained to then-Unit Manager Sara Fry (who is not a defendant in this case) about prior instances of Carl denying him ice. But Williams doesn't explain how often these previous denials were and his complaint is limited to the eight instances listed above.

During the eight days in question, Carl worked first shift from 6:00 a.m. to 2:00 p.m. and always had another staff member working with her who could also have fielded prisoners' requests for ice. Carl doesn't remember denying Williams's request to leave his cell any of those days, but she does remember him at times refusing ice during medication-pass times. There was another medication pass during Carl's shift, around 12:30 p.m., and Williams does not explicitly say that Carl denied him ice those times. At some point, Williams spoke to Carl about the denial of his ice and he suggested that he would file a grievance or lawsuit about it. Carl started to note in the unit log when Williams refused ice. Carl was aware that Williams had filed grievances and lawsuits in the past against prison officials.

5

Inmates who wished to complain about actions by prison staff were supposed to contact "appropriate staff" before filing a formal grievance. Williams says that defendant Wogernese was the designated person to contact. Williams wrote to Wogernese four times without getting a response. Wogernese had previously acted as a complaint examiner on a grievance Williams brought against Fry for confiscation of his wedding ring.

On April 13, 2016, Williams placed an envelope containing a complaint against Carl in Wogernese's mailbox. The next day, Williams saw Carl open the envelope and read the complaint. Later that day, Williams was transferred to a new unit, managed by defendant Ziegler. Williams believes that Carl got Ziegler to transfer him.

Carl says that she did not have the authority to transfer prisoners. Unit managers make decisions about transfers between units, unless there is an after-hours emergency, in which case the shift supervisor would make the decision. Wogernese was the acting unit manager for Williams's unit the day he was transferred. But Williams says that Wogernese was not at work the day that he was transferred. The parties do not explain who the shift supervisor was that day.

Once Williams got to Ziegler's unit, Ziegler instructed non-defendant Sergeant Bertz to assign Williams to an empty upper bunk. Unless an inmate has a medical restriction from Health Services Unit staff stating that he cannot be assigned to an upper bunk, the inmate is assigned a bunk based on bed availability. If an inmate refuses to get into his bunk at designated times, that violates prison rules and the inmate may be subject to disciplinary action. Sometimes inmates are given "lower bunk restrictions," meaning that they may not be placed in an upper bunk for medical reasons. Williams did not have a lower-bunk restriction during the events of this case.

Later that day, Williams refused to "lock in" for count and get into his upper bunk. Williams thought that it would be too painful for him to climb up to the upper bunk. Williams says that Ziegler saw that he was wearing a knee brace and his special "surgical" boot for his gout; Ziegler says that was unaware of any medical reason to give Williams a lower bunk. Ziegler reported Williams's refusal to a security supervisor, who ordered Williams placed into temporary lockup status. Bertz wrote Williams a conduct report for disobeying orders and conducting himself in a disrupting manner.

In late April a disciplinary hearing was held on the conduct report. Wogernese was the hearing officer who presided over the hearing. Wogernese's assignment was made by the prison's security director.

During the hearing, Williams acknowledged that he did not have a lower-bunk restriction and that his request for one was denied in 2014 and 2015. Wogernese found Williams guilty on both counts because Williams admitted that the conduct report was correct as written. Wogernese gave Williams 60 days of disciplinary segregation, which was the DOC's recommended disposition for those offenses.

At the hearing, Williams says that he asked Wogernese why he didn't respond to any of his complaints about Carl, and Wogernese responded that he didn't have time to reply.

ANALYSIS

Williams brings against defendants under both the First and Eighth Amendments to the United States Constitution. I'll start with the Eighth Amendment claims.

## A. Eighth Amendment

Williams alleges that defendant Carl would not allow Williams to leave his cell to get treatment for his gout and that defendant Wogernese failed to intervene in the mistreatment. Williams also alleges that defendant Ziegler forced him to have an upper-bunk assignment despite knowing about his painful joint condition, and that Carl got Williams transferred to Ziegler's unit specifically because she knew that Ziegler would mistreat him.

The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996).

### 1. Carl's denial of medication-pass ice

Williams brings a claim against defendant Carl for not letting him out of his cell to get medical ice eight different days between February and April 2016. For six of these days, Williams explicitly states that Carl denied him ice once each day, at the morning medication-

8

pass time. For the other two days, it's unclear whether Carl did this once or twice each day. So Carl blocked Williams from getting ice between eight and ten times over about two months.

The parties dispute whether Williams actually asked to be let out or whether Carl was aware of Williams's medical needs, but I need not discuss those issues further, because even assuming that Carl intentionally blocked Williams from getting ice and she knew that it was for Williams's gout, Williams fails to present evidence showing that he was harmed by these isolated events.

As I stated in Williams's other recent case about medical ice for gout, *Williams v. Anderson*, No. 17-cv-304-jdp, 2019 WL 6530048, at *4 (W.D. Wis. Dec. 4, 2019), gout itself almost certainly is a serious medical need, but the relevant question in cases like these is whether Williams's symptoms at the time of the deprivations were serious enough that the deprivation of treatment could violate the Eighth Amendment. Williams can't prevail on his claim unless he shows that Carl's action caused him injury or at least a serious risk of injury. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct . . . without providing evidence that the failure caused injury or a serious risk of injury.").

Williams fails to do that here. He says that he suffers from painful flare-ups only several times a year, totaling about 20 days. He does not say that he was in the middle of a flare-up during the events of this case, so he fails to establish that he was using the ice to directly treat pain. He also doesn't properly dispute that he could still get ice during dayroom hours or after meals to make up for the missing medication-pass ice.

I take Williams to be saying that he still used ice the rest of the year to reduce inflammation and fluid buildup with the goal of staving off flare-ups. In his brief in support of

his summary judgment motion, he also says that because of Carl's actions, "gout has occurred and [his] foot is now swollen." Dkt. 46 at 4. But he doesn't provide any medical evidence supporting these theories, and he doesn't plausibly explain how missing a handful of icing sessions could harm him.

So all Williams has to support his claim is that over about a two-month period, Carl blocked him from a handful of opportunities to get ice to treat a non-acute problem. Because this isn't enough to show that Williams was harmed or even exposed to a risk of harm, I will grant summary judgment to defendants on this claim against Carl, and I'll deny Williams's summary judgment motion on this claim.

**2. Wogernese's failure to intervene**

Williams brings an Eighth Amendment claim against defendant Wogernese for failing to respond to his complaints about Carl not letting him out of his cell to get medical ice. Because I've already concluded that there's no evidence that Williams suffered harm from Carl's denials, there's no evidence that Wogernese's inaction harmed him either. So I'll grant defendants' motion for summary judgment on this claim and deny Williams's parallel motion.

**3. Transfer to another unit**

Williams brings an Eighth Amendment claim against Carl for having him transferred to defendant Ziegler's unit, knowing that Ziegler would harm him. Defendants say that Carl didn't have the power to transfer inmates; it's the unit manager's responsibility. Williams says that on the day he was transferred, the acting unit manager—defendant Wogernese—wasn't at work, that Carl got Ziegler to have him transferred to his unit, and that the two of them conspired to harm him. Williams doesn't explain how he knows that Wogernese wasn't at CCI and thus didn't make the decision, but I can infer that he could know which of his jailers was

on the job a particular day. But Williams doesn't have personal knowledge of who made the transfer decision. Carl says that she didn't. Wogernese doesn't remember this decision. Ziegler doesn't say who made it either. The shift supervisor could make that decision in an after-hours emergency, but this was in the morning, and no one says who the shift supervisor was on that day. Neither side provides a document showing who made the decision.

To support his theory that Carl made the decision, Williams says that earlier in the day he saw Carl read a complaint that Williams had addressed to Wogernese. But the timing of these events doesn't prove that Carl was the person who transferred him. And even if Williams could show that Carl was the one who transferred him, he does not provide any evidence supporting his theory that Carl knew that he would be harmed in Ziegler's unit, or that Carl and Ziegler conspired to ensure that Williams would suffer harm. Williams's mere speculation that defendants conspired against him because they were friends or because they were angry about Williams's prior grievances or lawsuits is not enough to create a disputed issue of material fact. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (speculation not enough to defeat motion for summary judgment). So Williams doesn't have any evidence that could lead a reasonable jury to conclude that Carl violated the Eighth Amendment. I will grant defendants' motion for summary judgment on this claim and deny Williams's parallel motion.

### 4. Top-bunk placement

Williams alleges that defendant Ziegler forced him to occupy a top bunk even though that would have caused Williams pain because of his medical problems. Defendants contend that Ziegler could not have disregarded Williams's medical problems because he wasn't aware of them. Williams says that Ziegler was aware because he saw that Williams was wearing his

back brace and "surgical" boot when he came to Ziegler's unit. Williams wearing the brace and boot doesn't prove what medical conditions he had. But I conclude that there is a disputed issue of fact over whether Ziegler had any knowledge that Williams was physically limited by medical problems.

Nonetheless, that doesn't mean that Ziegler consciously disregarded Williams's problems. It's undisputed that Williams didn't have a medical restriction prohibiting his placement in an upper bunk, and Ziegler isn't the person who makes those decisions. In his role as a unit manager, Ziegler was entitled to rely on the medical-restriction system the DOC has in place to decide whether inmates need restrictions like lower-bunk only status. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). So I'll grant defendants' motion for summary judgment on this claim and deny Williams's parallel motion.

**B. First Amendment retaliation**

Williams contends that defendant Carl transferred him to Ziegler's unit in retaliation for him filing a lawsuit against other prison staff who are friends of theirs, particularly a former unit manager named Sara Fry. He contends that defendant Ziegler had an officer take him to administrative confinement and issue him a conduct report for refusing to go to the top bunk in retaliation for the lawsuit against Fry and because Ziegler was friends with Carl. Williams contends that defendant Wogernese is also friends with Carl and that Wogernese punished him with 60 days of segregation for that conduct report because he complained about Carl and he suggests that Wogernese was already part of a conspiracy to harm him, going back to his case about confiscation of his wedding ring.

To succeed on his retaliation claims, Williams must establish that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decisions to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Williams has the First Amendment right to file legitimate lawsuits and grievances. I've already concluded that Williams fails to provide evidence showing that Carl was responsible for his transfer. But even assuming that Carl was responsible for the transfer, and that the actions taken by defendants were enough to deter a person in Williams's position from filing lawsuits in the future, Williams fails on the motivating-factor element of the claim. Williams provides nothing other than his belief that his lawsuits and grievances were the reason that defendants took those actions. He says that "word gets around" the prison when a lawsuit is filed against a staff member. Carl admits that she knew that Williams filed lawsuits and grievances, although she does not explain whether she knew about the specific lawsuit Williams is talking about. The parties dispute whether Wogernese knew about a grievance against Carl; Williams says that Wogernese would have known because he was the person to informally resolve those complaints before filing a grievance against a staff member.

But regardless whether defendants knew generally about Williams having filed lawsuits and grievances, or whether they knew more specifically about the particular lawsuit against Fry or grievance against Carl, that alone is not enough to show that they took any action *because* of that knowledge. Williams's mere speculation that defendants meant to retaliate against him because defendants were friends or that "word got around the prison" is not enough to create

a disputed issue of material fact. So I'll deny Williams's motion for summary judgment and grant defendants' motion for summary judgment on these claims.

**C. State-law claims**

In his own motion for summary judgment, Williams continued to press his state law negligence and negligent-infliction-of-emotional-distress claims. *See* Dkt. 46, at 10. But in their motion for summary judgment, defendants say that Williams abandoned those claims at his deposition:

> Q: Can you explain your State negligence claim?
>
> A: He dismissed that, the State negligence claim.
>
> Q: So there's no State negligence claim?
>
> A: No, I think the judge dismissed that.
>
> Q: So you're not pursuing the State negligence claim?
>
> A: No, I'm not, not at this time, no.
>
> Q: So it's just the retaliation—
>
> A: And deliberate indifferences.
>
> Q: —and deliberate indifference?
>
> A: Affirmative.
>
> Q: Okay. And that was of your own decision—
>
> A: Yes, it was.
>
> Q: —to dismiss the—you're not pursuing the negligence claim, the Wisconsin State negligence claim or infliction of emotional distress?
>
> A: Yes, it was.

Dkt. 85, at 72–73.

To be clear, counter to Williams's statement at his deposition, the only state-law claims I had dismissed at that point were his claims for intentional infliction of emotional distress. But nonetheless, Williams did say that his case was limited to the constitutional claims. And in his materials opposing defendants' motion for summary judgment, he did not object to defendants saying that he abandoned his state-law claims. So I will dismiss those claims as abandoned. That means that the entire case will be dismissed.

ORDER

IT IS ORDERED that:

1. Plaintiff Roosevelt Williams's motions to compel discovery, Dkt. 81 and Dkt. 94, are DENIED.

2. Plaintiff's motion for issuance of a subpoena, Dkt. 82, is DENIED.

3. Plaintiff's renewed motion for the court's assistance in recruiting him counsel, Dkt. 83, is DENIED.

4. Plaintiff's motion to intervene in non-defendant prison officials' retaliation against him, Dkt. 101, is DENIED.

5. Plaintiff's motion for extension of time to file his response to defendants' motion for summary judgment, Dkt. 95, is GRANTED.

6. Defendants' motion to amend the schedule, Dkt. 104, is DENIED as moot.

7. Plaintiff's motion for summary judgment, Dkt. 45, is DENIED.

8. Defendants' motion for summary judgment, Dkt. 86, is GRANTED.

9. The clerk of court is directed to enter judgment for defendants and close the case.

Entered March 30, 2020.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge